# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT NASHVILLE

_____

|  |  |  |
|---|---|---|
| **GINGER C. SNEAD and** | ) | Williamson County Circuit |
| **JAMES D. SNEAD**, | ) | Court No. 95405 |
|  | ) |  |
| Plaintiffs/Appellants. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 01A01-9702-CV-00085 |
|  | ) |  |
| **LOIS V. METTS**, | ) |  |
|  | ) |  |
| Defendant/Appellee. | ) |  |
|  | ) |  |

**FILED**

December 5, 1997

**Cecil W. Crowson**
**Appellate Court Clerk**

From the Circuit Court of Williamson County at Franklin.
**Honorable Henry Denmark Bell, Judge**

**Steve C. Norris**, Nashville, Tennessee
Attorney for Plaintiffs/Appellants.

**John L. Norris**, HOLLINS, WAGSTER & YARBROUGH, Nashville, Tennessee
Attorney for Defendant/Appellee.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**LILLARD, J.**: (Concurs)

The plaintiffs, Ginger C. Snead and James D. Snead, sued the defendant, Lois A. Metts as a result of a vehicular accident which occurred on July 22, 1994. It is undisputed that the car driven by Ms. Metts struck the car driven by Ms. Snead in the rear while the Snead vehicle was stopped at a stop sign. Ms. Snead sued for injuries and damages and Mr. Snead sued for loss of consortium.

The jury returned a verdict in favor of Ms. Snead for $750 and Mr. Snead in the amount of $200. They appeal and present the following issues:

> 1. Whether the trial court erred in admitting into evidence the office notes of Dr. Robert B. Snyder and of Dr. Roger A. Hodge, both dated December 8, 1994, in which each doctor stated what the other doctor said during a telephone conversation.
>
> A. Whether the statements contained in each doctor's office notes reporting what the other doctor told him on the telephone are inadmissible hearsay.
>
> B. Whether the introduction of these records was harmless error.

The appellants' argument is based on the following from a December 8, 1994 note of Dr. Hodge and a December 8, 1994 note of Dr. Snyder which state respectively:

> Dr. Snyder returned my call and we discussed her condition. He thinks that her accident was quite minor and is not impressed with her musculoskeletal findings. He thinks that she is emotional and depressed, and seeking some secondary gain. He did not want to allow her to miss further work.
>
> I talked to Dr. Hodge today. Apparently, Mrs. Snead was in his office yesterday very upset and crying and wanted him to keep her off work. He believes there is a lot of anger and situational depression as well. I confirmed this, and that there are a lot of symptoms and very little signs involved in her case. He is going to continue as her primary care physician for treatment.

The plaintiffs contend that these records of each doctor stating what the other doctor stated are inadmissible hearsay. They argue that the "first level" of hearsay consists of notes instead of in person testimony of the doctor who made the notes, which they concede is admissible under the business records exceptions of the hearsay rule. However, they contend the "second level" of

hearsay consists of each doctor reporting what the other said which does not qualify under any hearsay exception.

Defendant first counters that there was an agreement between counsel that the medical records could be introduced into evidence without objection. The basis of this argument is an exchange between counsel and the trial court *en camera* wherein plaintiffs' attorney objected to the introduction into evidence of the above notes. The response of defendant's counsel and the court's ruling are as follows:

> MR. J. NORRIS:[1] May it please the Court, we strenuously disagree. Mr. Norris wants to introduce this thick package of records to which we would have all sorts of objections based on the Court's ruling that these two entries go in. Based on whether or not it be a radiologist, a pathologist, they rely on conversations. They rely on all sorts of information, and certainly, one of those sources is what another doctor says.
>
> So we submit that these are part of the office notes, part of the total picture history of this patient, and that Your Honor has correctly decided this matter.
>
> THE COURT: All right. I rule against the Plaintiff on his objection, with the statement that the Court will hold the defense counsel to his not objecting to any of the other records.

Plaintiffs' attorney made no further statement and no further objection at the time the notes were read into evidence. Our review of the record reveals that Plaintiffs did introduce, without objection, numerous exhibits consisting of medical reports, doctor's notes, medical bills and various other documents consisting of some 50 to 60 pages. The defendants argument is further buttressed by the fact that some of the doctors' notes introduced by Plaintiffs likewise contained statements made by doctors and health care providers other than the one who made the note.[2] We can readily understand how the defendant's counsel was led to believe that there was a tacit agreement between counsel that each could introduce the medical records without objection. While the record introduced by the plaintiffs contained notation from several medical providers, the only physicians

---

[1]The plaintiffs were represented by Mr. Steve C. Norris and the defendant by Mr. John L. Norris.

[2]For example, Plaintiffs' exhibit # 9 is a letter from Dr. Bobo Tanner to Dr. Hodge which states in part "Dr. Parris said he may re-order one (referring to an MRI) . . ."

who testified, both by deposition, were Dr. William Richard Carl Stewart, III and Dr. Robert B. Snyder.

However, since it is not patently obvious that there was an agreement between counsel, we will examine the plaintiffs' argument further. As to Plaintiffs' argument of inadmissible hearsay, the defendant counters that the contested notes of Drs. Snyder and Hodge were admissible as business records pursuant to Rule 803(6) of the Tennessee Rules of Evidence.[3] She further contends the notes were admissible under the completeness doctrine as set forth at Rule 106 T.R.E.[4] As to the record of Dr. Snyder, after stating what was said to him by Dr. Hodge, Dr. Snyder went on to say that "I confirmed this, and that there are a lot of symptoms and very little signs involved in her case." With respect to Dr. Hodge's notation that Dr. Snyder stated to him that the patient was emotional and depressed, there is evidence of depression in the evidence submitted by the plaintiff herself. In discussing his telephone conversation with Dr. Hodge, Dr. Snyder testified that "I confirmed that it had mirrored my assessment and I explained to him that there were a lot of symptoms; that is, a lot of complaints but very little signs involved in her case."

However, assuming *arguendo* that Plaintiffs are correct on their evidentiary argument, we believe that if there was error it was harmless. Rule 36 T.R.A.P. As will be shown, the severity of the impact was sharply disputed and it was Defendant's theory throughout the trial that the impact was so slight that it could not have caused the injuries of which Ms. Snead complained. Dr. Snyder, an orthopedic surgeon, testified that Ms. Snead was referred to him by Dr. James P. Wilson, an internal medicine specialist and primary care physician. Dr. Snyder testified that, based on his examination, Ms. Snead appeared depressed. When he examined her on August

---

[3]**Records of Regularly Conducted Activity.** A memorandum, report, record, or data compilation in any form of acts, events, conditions, opinions, or diagnoses made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes every kind of business, institution, association, profession, occupation, and calling, whether or not conducted for profit.

[4]When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

18, 1994 he did not find any evidence of any injury at all to her neck or shoulders. Other than some tenderness, he did not find anything wrong with her low back. He found no muscle spasm. All x-rays were normal and he expected her symptoms to resolve with time. It was his opinion that as of December 1, 1994 Ms. Snead was able to return to regular job duties but she told him that she did not want to go back to work. The only objective evidence of injury found was minimum tenderness in the lumbar spine. He described an objective sign as a reproducible, external evidence or observable evidence of underlying symptoms of what the patient says. He testified that her complaints of pain were greater than those of most of his other patients with similar physical findings and that her complaints of pain were out of proportion to the physical and observable findings that he could find on physical examination.

The only witnesses testifying to the accident itself were the two drivers. Ms. Snead testified that she was stopped when her car was struck from the rear very hard and that her car was thrown forward. She described her rear bumper as smashed. According to Dr. Wilson's notes the patient told him that she was rear-ended at 35 miles an hour. Ms. Snead denied this but testified that the defendant's car was traveling at least 30 miles per hour when it was struck. The repair costs to the Snead vehicle was $253.

Ms. Snead did not remember whether or not the impact awakened her child who was in the car seat beside her. Her child was not injured and she did not see any damage to the defendant's vehicle. She testified that she kept notes on her condition beginning the Monday following the accident up until the time she employed an attorney.

Ms. Metts testified that she is a registered nurse and was on her way to work at the time of the accident. As she approached an intersection, there was a line of traffic stopped in front of her at a 4-way stop. She slowed her car, put her foot on the brake and began to roll forward. At that time her car phone rang, startling her, and she struck the car in front of her. She testified at the time her car was moving at between 2 and 5 miles per hour. At first she didn't realize that she had struck the vehicle in front of her, but thought she had just applied her brakes too hard. It wasn't until she got out of her car that she realized that there had been an accident. She testified she wasn't hurt and her glasses were not knocked off. Her purse on the seat beside her was not knocked off and her

coffee, which was in a holder, was not spilled. She further testified that the Snead vehicle was not knocked forward. Ms. Snead told her that she was not hurt. They were at the scene for approximately one hour and Ms. Metts observed no signs of physical injury to her but Ms. Snead did say that her back hurt. Ms. Metts testified that there was no damage to her car.[5]

Roger Metts, Lois Metts' husband, testified that he is a supervisor at a maintenance and repair garage for Ryder Truck Rental. His wife was driving a 1990 Nissan Sentra at the time of the accident. He examined it after the accident and found no physical damage except for a couple of black marks on the front bumper which were removed with wax. He testified that the bumper on his wife's car had an impact rating of 2-1/2 to 5 miles per hour and is an energy-absorbing bumper.

Our scope of review is set forth in Rule 13(d) T.R.A.P. Findings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict. The jury was presented with evidence that Ms. Snead incurred medical expenses in excess of $8,000 and loss of earnings of approximately $10,000. There was disputed medical testimony as to when she was medically determined to be able to return to work. The defendant admitted liability. Given the gross discrepancy between the drivers as to the nature and extent of the impact, based upon our review of this record we cannot say that the introduction of the portions of the notes of Drs. Hodge and Snyder more probably than not affected the judgment or would result in prejudice to the judicial process. Rule 36(b) T.R.A.P. Therefore, the judgment of the trial court is affirmed and the costs of this appeal are taxed to the plaintiffs/appellants.

_____
FARMER, J.

_____
HIGHERS, J. (Concurs)

_____
LILLARD, J. (Concurs)

_____

[5]The record indicates that a photograph of the Metts car was introduced into evidence as exhibit no. 22. However, we do not find that exhibit among the other 25 exhibits.